1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Estate of JAYNE BONHAM,                    No. 2:14-cv-2465 DB

12              Plaintiff,

13        v.                                    ORDER

14   SYLVIA MATHEWS BURWELL,
     SECRETARY OF HEALTH AND
15   HUMAN SERVICES OF THE UNITED
     STATES OF AMERICA,
16

17              Defendant.

18

19        This action is before the court seeking judicial review of the decision of the Medicare

20   Appeals Council and was submitted without oral argument for ruling on plaintiff's motion for

21   summary judgment.[1]  For the reasons explained below, plaintiff's motion is denied, the final

22   decision of the Secretary is affirmed, and judgment is entered for the defendant.

23                                     BACKGROUND

24        On June 5, 2011, beneficiary Jayne Bonham was admitted to ManorCare Health Services,

25   ("ManorCare"), a skilled nursing facility, ("SNF"), to receive intravenous antibiotics and

26   rehabilitation following left foot surgery.  (Administrative Record ("AR") at 126, 241-42.)  On

27   _____

28   [1]  Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant
     to 28 U.S.C. § 636(c).  (See ECF Nos. 17 & 19.)

1  July 19, 2011, Becky Hobbs, a ManorCare "RN Case Manager" reviewed Bonham's records,

2  noted that "IV antibiotics were completed" on July 15, 2011, that Bonham was "now refusing

3  therapy," and recommended that further SNF coverage be denied.  (Id. at 229.)  On July 20, 2011,

4  Dr. Steve Smith agreed with Hobbs' assessment.  (Id. at 239.)

5       That same day, Bonham's Medicare Advantage Organization, ("MAO"), United

6  Healthcare, notified her that SNF coverage would end effective July 22, 2011.  (Id. at 137-39.)

7  On July 22, 2011, Health Services Advisory Group, ("HSAG"), a Medicare Quality Improvement

8  Organization, ("QIO"), reviewed the July 20, 2011 decision and "agree[d] with the

9  discontinuation of coverage for the skilled services."  (Id. at 55.)  Bonham requested

10  reconsideration, and on July 25, 2011, HSAG notified Bonham that the "initial decision to end

11  coverage was *upheld* by a second HSAG physician."  (Id. at 58) (emphasis in original).

12       On August 18, 2011, Bonham filed an appeal of the July 25, 2011 denial of

13  reconsideration with the Office of Medicare Hearings and Appeals ("OMHA").  (Id. at 106-08.)

14  Bonham was discharged from ManorCare on October 3, 2011.  (Id. at 18.)  A hearing was held

15  before an Administrative Law Judge, ("ALJ"), on October 7, 2011.  (Id. at 468-523.)  Plaintiff

16  was represented by an attorney and testified at the administrative hearing.  (Id. at 475, 500.)

17  Bonham passed away on February 22, 2012.  (ECF No. 30 at 5.)  On March 21, 2012, the ALJ

18  issued a fully favorable decision, finding that the "MAO's decision to terminate coverage of SNF

19  services was not medically appropriate."  (AR at 29.)

20       On May 18, 2012, the Medicare Appeals Council, ("MAC"), received a request for review

21  by the MAO.  (Id. at 14.)  On May 23, 2014, the MAC issued a notice of decision, reversing the

22  ALJ's decision, and finding that "the enrollee's services were appropriately terminated on July

23  22, 2011."  (Id. at 7.)  Plaintiff, the estate of Jayne Bonham, sought judicial review pursuant to 42

24  U.S.C. § 405(g) by filing the complaint in this action on October 20, 2014.  (ECF No. 1.)

25  LEGAL STANDARD

26       The Medicare Act allows district courts to review the Secretary's final decision with

27  regard to Medicare coverage to ensure the decision is supported by substantial evidence.[2]  42

28  _____

[2]  The MAC's ruling is the final decision of the Secretary.  Conahan v. Sebelius, 659 F.3d 1246,

2

1  U.S.C § 405(g) (incorporated through 42 U.S.C § 1395w-22(g)(5)).  Substantial evidence is such

2  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

3  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978,

4  980 (9th Cir. 1997).  Moreover, "[t]he agency's interpretation of its own regulations receives

5  'substantial deference' and 'must be given controlling weight unless it is plainly erroneous or

6  inconsistent with the regulation.'"  Conahan v. Sebelius, 659 F.3d 1246, 1249 (9th Cir. 2011)

7  (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)); see also International

8  Rehabilitative Sciences Inc. v. Sebelius, 688 F.3d 994, 1000 (9th Cir. 2012) ("The Secretary's

9  denial of coverage will be affirmed unless it is arbitrary, capricious, an abuse of discretion, or

10  otherwise not in accordance with law.").

11  APPLICATION

12  The MAC found that "termination of services furnished to the enrollee as of July 22,

13  2011, was appropriate."  (AR at 5.)  Plaintiff argues that the MAC's decision "is contrary to the

14  decision of the Administrative Law Judge and is not supported by facts, evidence or law."  (Pl.'s

15  MSJ (ECF No. 24) at 3.)  In this regard, plaintiff argues that the MAC's decision failed to

16  consider the July 21, 2011 opinion of Bonham's treating physician, Dr. Reinhardt Hilzinger.  (Id.

17  at 4.)  The ALJ's decision relied on Dr. Hilzinger's opinion, stating that "[t]he Beneficiary's

18  physician noted that she was benefiting from therapy and required continued therapy."  (AR at

19  29-30.)

20  However, the MAC found that Bonham's "condition had plateaued, and even regressed by

21  July 22, 2011."  (Id. at 5.)  The finding of the MAC is supported by substantial evidence.  In this

22  regard, the July 21, 2011 "Detailed Explanation of Non-coverage" explained that prior to her

23  admission, Bonham "was noted to be Independent with dressing and requiring Moderate Assist

24  (Mod A) with bathing."  (Id. at 140.)  On June 6, 2011, a "Physical Therapy (PT) Evaluation"

25  stated:

26  ////

27  ////

28  _____

1249 (9th Cir. 2011) (citing Heckler v. Ringer, 466 U.S. 602, 607 (1984)).

> Documentation showed her to require Mod A with Bed mobility and transfers due to being Non-weight bearing (NWB) on the left foot. Sitting balance was Fair+/F, standing balance was Not tested due to NWB on left foot. Gait was not tested either. Wheel Chair (WC) mobility was 70' with Mod A.

(Id.) An Occupational Therapy evaluation performed that same day found Bonham to be "Mod A for Upper Body (UB) dressing and Maximum Assist (Max) for Lower Body dressing." (Id.)

Bonham was then reviewed regularly thereafter. A July 12, 2011, review

> . . . reflected a regression with bed mobility now requiring mod/max A. Transfers from chair to bed were fluctuating from Max to mod/max. Gait was declined secondary to increased fatigue. There was no change with OT functions. She remained Non-Weight Bearing.

(Id. at 141; see also at 226.)

A July 19, 2011 review found:

> Her Level of Assist with bed mobility had not changed, she refused chair to bed transfers, sitting balance remained Fair/Fair. She remained unable to ambulate secondary to increased fatigue. There was no change with ADL transfers.

(Id. at 142; see also at 228.) "Notes through 7/20 were requested as [Bonham] had not made improvements with therapy . . . and had also been refusing therapy." (Id. at 142.) "The documentations confirmed no progress had been made." (Id.)

Neither plaintiff's argument nor Dr. Hilzinger's opinion refutes the evidence noted above. To the contrary, while Dr. Hilzinger's opinion states that Bonham had "gained some strength" it also reflects that Bonham suffered from "[m]uscle wasting in upper and lower extremities with chronic weakness." (Id. at 116.)

Moreover, Dr. Hilzinger's opinion erroneously states that Bonham was "progressing with her physical therapy despite having some setbacks a couple of weeks ago." (Id. at 117.) As the MAC's decision noted, "[o]n multiple instances [Bonham] was unable to participate in PT and/or OT." (Id. at 6.) In this regard, it appears from the record that Bonham refused, declined, or did not perform some or all portions of her physical therapy and/or occupational therapy on June 7, 8, 9, 10, 14, 17, 23, 24, 25, 27 and 28, 2011, and on July 4, 6, 9, 15 and 16, 2011. (Id. at 165-68,

1  170-72, 175, 178.)

2      Medicare regulations explain that "skilled nursing and skilled rehabilitation services

3  means services that . . . [a]re furnished directly by, or under the supervision of" technical or

4  professional personnel.  42 C.F.R. § 409.31 (a).  "The beneficiary must require skilled nursing or

5  skilled rehabilitation services, or both, on a daily basis."  42 C.F.R. § 409.31(b)(1).  "To meet the

6  daily basis requirement specified in § 409.31(b)(1) . . . . [s]killed nursing services or skilled

7  rehabilitation services must be needed and provided 7 days a week."  42 C.F.R. § 409.34(a)(1).

8       Finally, Medicare coverage, in general, does not extend to custodial
        care.   42  U.S.C.  §  1395y(a)(9)  ("Notwithstanding  any  other
9       provision of this subchapter, no payment may be made under part A
        or part B of this subchapter for any expenses incurred for items or
10      services  .  .  .  where  such  expenses  are  for  custodial  care.").
        Custodial care is defined in the regulations as "any care that does
11      not meet the requirements for coverage as SNF care as set forth in
        §§ 409.31 through 409.35 of this chapter."  42 C.F.R. § 411.15(g).
12

13  United HealthCare, 774 F.Supp.2d at 1020.  In this regard, the MAC stated that "any failure to

14  participate [in therapy] of any frequency or significance, whether based on mere refusal or on a

15  legitimate medical basis, will require discharge from SNF care."  (AR at 6.)

16      Here, Bonham was authorized for SNF services to receive intravenous antibiotics and

17  rehabilitation following left foot surgery.  (Id. at 126, 241-42.)  By July 22, 2011, Bonham had

18  received her intravenous antibiotics.  Moreover, by July 22, 2011, Bonham had not been

19  receiving rehabilitation, in the form of physical and occupation therapy, on a daily basis.

20      For the reasons stated above, the court finds that the MAC's decision was supported by

21  substantial evidence and that the agency's interpretation of its own regulations was not plainly

22  erroneous or inconsistent.

23                                    CONCLUSION

24      Having found no error, the court finds that plaintiff is not entitled to relief with respect to

25  its claim.

26      Accordingly, IT IS HEREBY ORDERED that:

27          1.  Plaintiff's motion for summary judgment (ECF No. 24) is denied;

28  ////

1     2.  The final decision of the Secretary is affirmed; and

2     3.  The Clerk of the Court is directed to enter judgment for the defendant.

3 Dated:  March 10, 2017

4

5

6           DEBORAH BARNES

           UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24 DLB:6

 DB\orders\orders.consent\bonham2465.ord

25

26

27

28